*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 19b0008n.06

# BANKRUPTCY APPELLATE PANEL

OF THE SIXTH CIRCUIT

IN RE: THEODORE A. PEREZ,
                        *Debtor.*

_____

DANIEL M. MCDERMOTT, United States Trustee,
                        *Plaintiff-Appellee*,

    *v.*

THEODORE A. PEREZ,
                        *Defendant-Appellant*.

No. 18-8036

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Cleveland;
No. 15-bk-17050, Adv. No. 16-ap-1075—Jessica E. Price Smith, Judge.

Argued: August 13, 2019

Decided and Filed: December 30, 2019

Before: BUCHANAN, DALES, and OPPERMAN, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:** Charles J. Van Ness, VAN NESS LAW, Mayfield Heights, Ohio, for Appellant. Sumi Sakata, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Charles J. Van Ness, VAN NESS LAW, Mayfield Heights, Ohio, for Appellant. Sumi Sakata, Amy L. Good, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

# OPINION

BETH A. BUCHANAN, Bankruptcy Appellate Panel Judge.

## ISSUES ON APPEAL

Chapter 7 debtor, Theodore A. Perez ("Perez"), appeals the bankruptcy court's decision to deny his discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4). Perez raises three arguments on appeal: (1) the bankruptcy court erred in denying Perez his discharge pursuant to § 727(a)(2); (2) the bankruptcy court erred in denying Perez his discharge pursuant to § 727(a)(4); and (3) the bankruptcy court erred in granting the United States Trustee's motion to conform the pleadings to the evidence. This Panel affirms the bankruptcy court's decision to deny discharge under 11 U.S.C. § 727(a)(4).

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely sought review in the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A disappointed litigant may appeal from a final order of the bankruptcy court as of right. 28 U.S.C. § 158(a)(1). For the purpose of an appeal, a final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989). A denial of a debtor's discharge is a final order. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 721 (B.A.P. 6th Cir. 1999).

Findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000). A false oath finding is reviewed on appeal as a question of fact. *Id.* at 685. A factual finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Kraus Anderson*

*Capital, Inc. v. Bradley (In re Bradley)*, 507 B.R. 192, 196 (B.A.P. 6th Cir. 2014) (quoting *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007) (internal quotation marks and citation omitted)).

## FACTS

Perez was a police officer for the City of Cleveland for 20 years.[1] He completed high school prior to entering the police academy. In addition, for about seven years, Perez worked in private security for Gracetech, a company founded by his best friend, John Grace ("Grace"). Grace passed away in July of 2007. Shortly after Grace's death, Perez founded his own security company, Precision Security Agency LLC ("Precision").

Gracetech only had one account, Dave's Supermarkets. Precision began servicing that account and, at the time of trial, Dave's Supermarkets paid Precision between $11,000 and $12,700 each week for security services. In addition, Precision had other clients for which it provided security. Perez testified that he could not get any new clients because the State of Ohio had moved to revoke Precision's security license. Prior to the bankruptcy, Grace's mother and Gracetech filed a lawsuit against Precision and Perez alleging the defendants "stole her son's business[.]" Tr. of April 26, 2018 Hr'g ("Trial Tr.") at 111:11–12, ECF No. 54.[2] This lawsuit resulted in a judgment of joint and several liability against Precision and Perez for $450,000 plus attorney fees. The state court ordered the defendants to post a supersedeas bond in the amount of $1,106,682.21 as a condition for obtaining a stay pending appeal. UST Exhibits 23 and 24 at 1, ECF No. 53.[3] Perez filed a voluntary Chapter 7 petition on December 13, 2015 to stop collection on the judgment. The Chapter 7 trustee filed a report of no distribution in April 2017.

---

[1]As part of a plea agreement, in May 2017, Perez resigned from the Cleveland Police Department and pled guilty to the attempted use of state property. Tr. of April 26, 2018 Hr'g at 101, ECF No. 54. To accommodate the criminal proceeding, the bankruptcy court delayed the trial regarding the United States Trustee's objection to discharge.

[2]Unless otherwise noted, all references to "ECF No." are to the bankruptcy court docket, *McDermott v. Perez*, Adv. No. 16-1075 (Bankr. N.D. Ohio), and were designated as part of the appellate record.

[3]All of the exhibits cited were admitted at the trial and are found at ECF No. 53.

On question 19 of Perez's Schedule A/B, he listed a 100% membership interest in Precision but valued that interest at $0.[4] Perez did not list any interest in his other limited liability company, T69P Properties LLC ("T69P"). Perez listed his occupation on Schedule I as a detective for the City of Cleveland, and gave a gross monthly income figure of $4,863.45. In addition, Perez listed under line 8h, other monthly income, $1,337.83 for his net salary from Precision. On line 17 of Schedule A/B, he listed two bank accounts, one with Dollar Bank, with a balance of $450, the other with the Cleveland Police Credit Union, with a balance of $20.25. He did not list his personal Chase Bank account.

In his Statement of Financial Affairs ("SOFA"), question 4, Perez did provide additional information on income that he omitted from Schedule I. For example, he listed income that he received from Precision as wages and, as the SOFA provides, separately provided his income from operating the business. For 2013, Perez listed $11,637 for operating a business and $71,800 in wages. For 2014, Perez listed $67,276.02 in wages, and "unknown" for operating a business. For 2015, he listed $75,478.04 for wages and "unknown" for operating a business. In Perez's amended SOFA, filed on March 10, 2016 after he completed his 2014 tax returns, he reported income of $81,374 from operating the business in 2014.[5] These figures correspond with the Subchapter S tax returns for Precision, the K-1 form issued from Precision to Perez, and Perez's individual tax returns. These larger income figures are not from the salary Perez took as the only shareholder of Precision, but represent personal expenses that he paid by using the Precision debit card. The United States Trustee ("UST") ultimately disputed the accuracy of both Perez's SOFA and Schedule I.

On May 19, 2016, the UST filed a complaint to deny Perez his discharge pursuant to 11 U.S.C. § 727(a)(2)(A) (pre-petition concealment of property) and (a)(4)(A) (false oath or account). The bankruptcy court conducted a trial on the UST's complaint on April 26, 2018.

---

[4]Question 19 requires a debtor to list any "[n]on-publicly traded stock or interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture," the percentage of that ownership, and the value of that interest. This question is in Part 4 of Schedule A/B, which only provides the following guidance as to reporting value — "Do not deduct secured claims or exemptions." UST Exhibit 3.

[5]Perez testified that his 2015, 2016 and 2017 tax returns were delayed by his criminal proceeding.

Only two witnesses testified at the trial, Catherine Lowman ("Lowman"), an auditor for the UST, and Perez.

The UST's complaint and trial presentation focused on the following items: (1) Perez's failure to disclose an interest in T69P (false oath and concealment); (2) his failure to disclose all of his income (false oath and concealment); and (3) his failure to list an accurate value for Precision on Schedule A/B (false oath). The fourth issue at trial, though omitted from the UST's complaint, involved Perez's failure to disclose his personal deposit account with Chase Bank (false oath and concealment). After the trial, the UST filed a motion to conform the trial evidence to the pleadings to include the Chase Bank omission, which the bankruptcy court granted over Perez's objection.

Lowman reviewed Perez's 2013 through 2015 Precision Chase Bank account statements and found multiple entries that she determined were personal expenses of Perez, rather than business expenses of Precision. These expenses included cruises, restaurants, tickets, eyeglasses, and other consumer transactions. Perez used the debit card linked to the Precision Chase Bank account to pay these expenses. Although he offered explanations for why Precision paid some expenses, he also acknowledged many of the entries reflected his personal expenses. In addition, Lowman testified that she could not account for the source of the deposits into the personal Chase Bank account and Perez could not either.

Lowman estimated that Perez understated his income by $1,500 to $2,000 each month for the years she reviewed, 2013 through 2015. She also estimated the total personal benefit to Perez from using Precision's debit card to be about $74,000 in 2013, $81,000 in 2014, and $112,000 in 2015. Lowman prepared a summary of withdrawals and purchases that she regarded as personal expenses. UST Exhibit 22 at 1 (totaling purchases, cash withdrawals, and counter withdrawals). The 2013 figure was significantly higher than what Perez disclosed as his income on the SOFA, $11,637, although the 2014 figure is consistent with the amended SOFA. Lowman indicated that this income should have been included on Schedule I as "other monthly income" or net income from operating a business. Lowman based her conclusions on a review

of the bank records, although she did not discuss the bank records with Perez, Chase Bank, or Perez's accountant before trial.

On cross-examination, Perez's counsel questioned Lowman about Precision's status as an "S Corporation." Lowman testified that income generated by an S corporation is attributed to the shareholder on the shareholder's individual tax return whether such income is distributed or not. "Distributions," in contrast to income, refer to property that a shareholder in an S corporation actually receives on account of his shares. The shareholder, similar to a partner, receives a K-1 form from the S corporation which reports distributions and other relevant tax information. Lowman had no personal knowledge that the Precision tax return, the K-1 form issued to Perez, or Perez's individual tax information were inaccurate, and apparently Perez used the information from his tax returns to report the business income on the SOFA. Lowman testified that listing "unknown" for the business income Perez received from Precision for 2015 in his original SOFA was improper, because although the relevant tax returns were not filed, Perez had access to the bank records. Lowman also concluded, based on her review of bank statements, that the figures on the SOFA were "incorrect or understated." Trial Tr. 79:1.

Lowman further testified that she discovered Perez owned another limited liability company known as T69P, and that in turn T69P owned real property located at 12703 Triskett Avenue (the "Triskett Avenue Property"). This was the business location for Precision. *See also* Perez Exhibit G (legal description of the Triskett Avenue Property). Other than the Triskett Avenue Property, T69P has no other assets. Neither the schedules nor the SOFA listed T69P.

Perez gave inconsistent testimony as to the ownership and legal status of T69P and the Triskett Avenue Property. He testified that T69P purchased the Triskett Avenue Property in July of 2015. He explained, somewhat inconsistently, that Precision transferred the Triskett Avenue Property to T69P for insurance purposes. When asked who the controlling member of T69P was, Perez did not answer the question directly, but instead explained that he prepared the Articles of Incorporation. *See* Perez Exhibit J (Articles of Organization for T69P). When asked why he did not include T69P in his initial filings, Perez indicated he thought it was not necessary because he had filed a personal bankruptcy. Perez also stated he did not consider T69P to be a

business because it just owned the building that housed Precision. He also referred to the Triskett Avenue Property as an asset of Precision and did not believe the Triskett Avenue Property had any equity. Perez stated at trial that he was not the owner of T69P, even though, during his deposition, he had stated that he was the sole owner of T69P. When asked about the assets of Precision at the meeting of creditors, Perez did not mention the Triskett Avenue Property, but did mention various vehicles, office equipment, and the use of Perez's rental property as an office for Precision.

The documentary record reflects that T69P was purchased by Precision from a third party, CMI1977, LLC, on or about June 19, 2015. Perez Exhibit F. The purchase price was $115,000. Precision granted CMI1977, LLC a mortgage and the related security interest on the Triskett Avenue Property. In order to purchase the Triskett Avenue Property, Perez and Precision borrowed $85,000 from CMI1977, LLC and signed a cognovit promissory note to repay this sum at 6% per annum in interest. With closing adjustments, the balance of the purchase price ($25,874) was paid using proceeds of a loan Precision obtained in April 2015 from OnDeck Financial. The quitclaim deed transferring the Triskett Avenue Property from Precision to T69P was recorded on or about August 18, 2015. There is no operating agreement for the LLC, or any other governing document identifying its members. In addition, nothing in the record suggests T69P is a subsidiary of Precision even though Perez claimed it was, because T69P had no other assets besides the deed on the real property that Precision used for its business.

Lowman also testified about scheduling Precision's value at zero. When asked if there was any evidence Precision could be sold for an amount greater than the judgments against it, Lowman stated that it was impermissible to schedule a business value at zero based solely on the liens filed against it but also said, "that's not the United States Trustee's determination . . . to market a business. We look at whether or not the business had value that was concealed from creditors." Trial Tr. 69:9–10. When asked what value she would place on Precision, she stated the value should be "[s]omething greater than zero." Trial Tr. 67:22. Lowman noted that in 2015, Precision had net deposits of $1,512,742.37 and, in 2013, $1,119,700.56. Perez testified the company had between 30 and 35 employees at any given time. Lowman stated that the

revenue of Precision was "substantial" and the business generated a net profit for the three years she reviewed.  Trial Tr. 68:1.

Perez, as noted, sometimes testified that the Triskett Avenue Property was an asset of Precision, and other times testified that the hard assets of Precision included five vehicles and some office equipment.  When asked how he valued Precision at zero, Perez stated that he consulted with counsel and "we could not put the company for sale and somebody say I'm going to give you an X amount of dollars for it, with a $1.2 million judgment against us."  *Id.* at 184.  Perez stated that despite any revenue or net profit of the company, he would agree Precision had value, but for the aforementioned judgment.  Perez further testified that the margin for Precision was "slim" and the business was earning little money.

The last issue was Perez's failure to schedule his personal Chase Bank Account from his Schedule A/B, where he listed other similar accounts.  He opened the account in December 2014.  Various deposits were put into this account in 2015.  The deposits did not include Perez's wages, which he directed into an account with Dollar Bank and later Huntington Bank.  Perez used the Chase Bank account frequently in 2015.  He could not explain deposits that went into the account, including one for $17,000, and others totaling over $8,000.

Immediately after the conclusion of the trial, the court defined the adversary proceeding as having "two big issues": "omissions" and "intent."  Trial Tr. 234:9–11.  First, the court found the failure to list T69P was an omission because Perez testified that he was a member of T69P both at the trial and during his deposition.  Second, the court raised concerns about the valuation of Precision at zero.  The bankruptcy court said that Perez's alternative explanation that T69P was a subsidiary of Precision "raised an additional question for me, which had to do with this issue of valuing [Precision]."  Trial Tr. 235:13.  The court explained its concern this way:

> When you are valuing an asset, it doesn't have zero value just because there are liabilities that are charged against it.  You actually need to sit down and take a look at it.  And my concern here is whether it was by recommendation of counsel that there appears to have been no value attributed to a business that was able to obtain a loan to purchase a building within the same year that its owner filed for bankruptcy.

> So whereas the Debtor's credit, based upon the judgment, may not have been sufficient in order to obtain the loan, this entity's credit was sufficient to obtain the loan, and if as was sometimes, the Debtor stated, understanding, if T69P was the owner of that property and was a subsidiary of Precision, then Precision had not only the value of the contracts and the funds that were coming in, but the value then of T69P, which was the building, which apparently underwent significant renovations at the end of 2015, based upon the testimony regarding the contractors that were paid in order to make the building a workable facility.
>
> So it looks like there was value not only in the contracts but value potentially in the building the Debtor thought was owned by Precision, but notwithstanding that, it was just given a zero value because it had liabilities. It was an operating business. So the fact that there was a large liability against it does not negate the fact that it did have --- that it could have some value.

Trial Tr. 235–36.

The court also stated that "there seemed to be inconsistent representations with respect to the Debtor's level of understanding regarding how [the] business operates[.]" Trial Tr. 236:20–23. Based on the actions Perez took, the bankruptcy court concluded that Perez understood that the personal benefits he was receiving from Precision as income because he provided this information to his accountant for income tax purposes.

The bankruptcy court also addressed the failure to disclose Perez's interest in T69P and the Triskett Avenue Property, as well as the undisclosed personal Chase Bank Account. Overall, the court found that various items were either omitted or "not properly disclosed." Trial Tr. 247:10.

The court ended by mentioning the advice of Perez's counsel. The court stated:

> I am going to state this now, just so that we are all clear, because I am slightly concerned that what I heard is that the omissions or failures may have been a result of reliance on counsel. The statement regarding perjury does not necessarily make that okay. You can't not tell the complete truth because your lawyer told you it's okay. So that needs to be addressed.

Trial Tr. 247:16–23.

Following post-trial briefs, the court ruled on the ultimate legal issues in an oral decision. Tr. of August 15, 2018 Hr'g ("Decision Tr.") at 1–9, Bankruptcy Case No. 15-17050, ECF No. 71.[6] The bankruptcy court made an initial assessment of Perez:

> This is a Debtor who was able to run a company, purchase a building, facilitate the growth of that business, make determinations of who he would hire based upon the requirements that needed to be met and how payments for those individuals were going to be made. **And so having had an opportunity to review the testimony of the parties to determine the credibility of the witnesses, based upon the statements that were made**, I rule as follows[.]"

Decision Tr. 2:18–3:1 (emphasis added). Next, the bankruptcy court recited the elements of both § 727(a)(2) and (a)(4). Then, the court enumerated Perez's several omissions:

> Here the material omissions were with respect to the Statement of Financial Affairs, as well as with the schedules. So as I indicated previously, there is no dispute that there was information missing from the SOFA, specifically the T69P entity, as well as the personal Chase bank account, and then benefits that were received in the nature of payments on behalf of the Debtor for the benefit of the Debtor by Precision Security Agency.

Decision Tr. 3:21–4:4. The decision then moved on to a discussion of the Precision valuation issue:

> Then there was a valuation of Precision Security Agency. And with respect to the valuation of Precision, there are many ways of valuing a company, and I understand Debtor's counsel's position that because there was a judgment against the company that he anticipated was larger than what the value of the company would be, the determination was made to list that at zero. . . . I don't find to be appropriate and I don't find the Debtor's reliance on counsel's statement sufficient to absolve him of the responsibility of making the determination of what the actual value of the company was, not just saying that it has no value because a judgment was taken, for which it might be held responsible.

Decision Tr. 4:5–24.

The decision next discussed Perez's failure to disclose income he received by using the Precision debit card for personal expenses and the intent of his actions:

---

[6] Although the oral decision was rendered in the adversary proceeding, the transcript was docketed in Perez's underlying bankruptcy case.

> But this is a Debtor who, again, had a separate job previously but was also running a company. It was clear from the documents the Debtor had filled out prior to and the testimony of the Debtor, the Debtor understood that the benefits that he was receiving from Precision in terms of the payments that they were making were income attributable to him because he was able to do that when he did it in his taxes. And so not doing it in the bankruptcy seems to have been a way to make it seem as though the Debtor had potentially less than may have been available for prospective creditors to collect. And then that takes us to the issue of intent. And the Debtor's argument seems to be that there would have been no intent, because why would he fail to disclose seventy some thousand dollars worth of potential income when there was a million dollar judgment.
>
> And that actually does not weigh in favor of the Debtor, because to the extent that the Debtor would appear to be collectible, that there would be an opportunity for funds potentially to be available, it is more in the Debtor's interest to appear to have less than appeared to be available as demonstrated by the cash that was flowing through the bank accounts, the source of which is still not completely clear, as well as the undervaluing of the business that was not disclosed, as well as the failure to disclose the benefit in the forms of payment being made by the Debtor's company to him by having them pay his bills. The Debtor knew what he was receiving because he had previously provided that information as income in other filings outside of the bankruptcy.
>
> So the failure to have included them in the SOFA and the schedules, I find was done with the intent to actually have hidden that information and, therefore, to present a false view of his financial condition in the context of this case to the detriment of creditors.
>
> I appreciate that the Debtor felt the need to describe the ways that he was running the business. I did find some of the statements that the Debtor made problematic, just in terms of when he was rehabbing the business and people that were coming in. It seemed to me that part of this Debtor's way of doing business involved particular shortcuts or ways to try to not have to disclose fully what the financial circumstances of this business was, or his financial circumstance, as demonstrated by the kind of cash payments going to contractors and things like that. Those tended to demonstrate that this Debtor had a level of sophistication on how to hide payments, which also weigh in favor of my finding that it was his intent to not disclose his full financial position.

Decision Tr. 5:5–7:7. The court also found the failure to disclose T69P was intentional. Decision Tr. at 7. Finding that T69P was part of Perez's business operations, the court continued:

> And so the failure to list that entity, I find was done intentionally in order to avoid questions about financing, funds and where — the Debtor's financial position,

> where money was coming from, where the ability to obtain loans, et cetera, came from, and to give parties an opportunity to inquire about any other financial statements or information that has been presented to support the Debtor's ability to do business in a way that he doing prior to the filing and prior to the judgment.

Decision Tr. 7:12–23. The decision discussed the failure to fully disclose the Precision income again:

> His income was understated, as demonstrated by the prior benefits and income that were shown in his tax returns and the fact that he was using Precision to pay his personal expenses, up to the date of filing. Again, this Debtor knew the difference between himself and these entities. He knew the difference between his own accounts and these entities' accounts, and knew that for tax purposes he needed to provide documentation, or at least account for the payments that were being made on his behalf by the company, but did not do that with respect to his bankruptcy filing.

Decision Tr. 7:24–8:9. Finally, the court gave a short analysis on the omission of the personal Chase Bank account:

> I'm still not clear as to how the personal Chase bank account did not make it into the schedules and how that information was omitted, other than finding that it appears that it was a purposeful omission that provided for the Debtor to not have to address issues with respect to the funds that were flowing through that account.

Decision Tr. 8:10–16. The court concluded:

> And under the totality of the circumstances, **listening to the testimony of this Debtor, listening to his characterization of all the things that have occurred to him in this matter**, including his apparent belief that having indictments come down from felonies to misdemeanors means that his behavior was not that bad, leads to a finding that this Debtor's overall information in terms of mistake is not credible. This was a Debtor that knew what he was doing. This was a Debtor who was perfectly attempting to create an entity with the resources of other people, making payments that would not necessarily be tracked by other people, with the intent of not having to pay things that he did not want to pay.
>
> And again, one of the things he did not want to pay was the large judgment that had been taken against him, which gives him an incentive to attempt to conceal assets and the true nature of his business's value.

Decision Tr. 8:17–9:5 (emphasis added). The court entered judgment denying Perez's discharge on August 16, 2018. Perez timely appealed.

**DISCUSSION**

The plaintiff bears the burden of proof in a trial seeking to deny a debtor his discharge. Fed. R. Bankr. P. 4005. The burden of proof is by a preponderance of the evidence. *Barclays/Amer. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994). The Sixth Circuit has stated in a decision involving a discharge appeal that "[t]he Bankruptcy Code should be construed liberally in favor of the debtor." *Keeney*, 227 F.3d at 683.

Section 727(a)(4)(A) provides an exception to the debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" "The fundamental purpose of § 727(a)(4)(A) is to ensure that the trustee and creditors have accurate information without having to conduct costly investigations." *Jahn v. Flemings (In re Flemings)*, 433 B.R. 230, 237 (Bankr. E.D. Tenn. 2010) (citation omitted).

To prevail under § 727(a)(4)(A), the Trustee must show that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Warren v. Rowland (In re Rowland)*, 441 B.R. 281, 286 (Bankr. S.D. Ohio 2010) (quoting *Keeney,* 227 F.3d at 685). A statement is material to the bankruptcy case "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Keeney*, 227 F.3d at 686 (citation omitted).

Statements in a debtor's bankruptcy schedules are given under penalty of perjury. *Hamo*, 233 B.R. at 725. Statements made during the meeting of creditors are made under oath. 11 U.S.C. § 343; *Ayers v. Babb* (*In re Babb*), 358 B.R. 343, 355 (Bankr. E.D. Tenn. 2006).[7] Statements during depositions or a Rule 2004 examination are also under oath. *Id.* Thus, any false statement, relating to the debtor's assets and financial circumstances, made by a debtor in

---

[7] A debtor who seeks relief under the Bankruptcy Code must file schedules listing all of the debtor's assets and liabilities, and current income and expenditures. Fed. R. Bankr. P. 1007(b)(1); 11 U.S.C. § 521(a)(1)(B). The debtor must verify "[a]ll petitions, lists, schedules, statements and amendments thereto" or sign them with "an unsworn declaration as provided in 28 U.S.C. § 1746." Fed. R. Bankr. P. 1008. Such statements, though unsworn, are made under penalty of perjury.

his schedules, at a meeting of creditors, or during a deposition could potentially lead to denial of a debtor's discharge under § 727(a)(4)(A) if all of the required elements to establish that exception are proven.

We begin with the UST's allegation that the failure to disclose Perez's interest in T69P was a false oath. The bankruptcy court was within its discretion in concluding that T69P should have been disclosed in some form on Perez's schedules or SOFA, and that Perez intentionally failed to do so. Even accepting Perez's alternative explanation that Precision owned the membership interest in T69P, Perez failed, under oath, to mention this significant asset at his meeting of creditors.

The record does not show that an operating agreement was ever created, and the only document reflecting the formation of T69P is the articles of organization, which Perez signed. In short, the bankruptcy court's conclusion that Perez was a member of T69P or, more precisely, the only member, is supported by the record. *See In re Breece*, B.A.P. No. 12-8018, 487 B.R. 599 (Table), 2013 WL 197399, at *3 (B.A.P. 6th Cir. Jan. 18, 2013) ("[A] person owning an equity interest in an LLC is a member of that LLC"). However, without any operating documents for T69P, the record might also support that that Perez signed the articles of organization as the member of Precision. In other words, the membership of T69P lacks the clarity an operating agreement or other corporate governance documents would provide. *See Stansfield v. On Target Consulting, LLC*, 90 N.E.3d 962, 965 (Ohio Ct. App. 2017) ("[W]hen determining if an individual is a member of a limited-liability company . . . the trial court must consider records maintained for the purpose of its corporate governance that name those owners entitled to receive distributions and share in the profits and losses of the company."); *Matthews v. D'Amore*, No. 05AP-1318, 2006 WL 3095817, at *11 (Ohio Ct. App. Nov. 2, 2006) (concluding that Ohio law looks to the operating agreement to define a membership interest). *See also* Ohio Rev. Code § 1705.01(G) and (H) (defining "member" and "membership interest"); *Germano v. Beaujean*, 997 N.E.2d 1238, 1241 (Ohio Ct. App. 2013) (noting that absent an operating agreement, certain other statutory sections within Ohio Revised Code § 1705 govern the relationship between members and the company's operation).

Nonetheless, under either circumstance, the outcome is the same. If Perez is the member of T69P, as he testified, he failed to list this membership interest, and the bankruptcy court's finding of fact that this is a false oath is well supported by the record. Conversely, if Precision had the membership interest in T69P, Perez had the opportunity to clarify these issues at the meeting of creditors when the Chapter 7 trustee asked about the assets of Precision. In his testimony at his meeting of creditors, he freely discussed the limited personal property assets of Precision, and his residential rental property also being used as a home office for Precision. Had he disclosed at the meeting of creditors Precision's membership interest in T69P or T69P's only asset, the Triskett Avenue Property, the trustee and the UST would have been on notice of this issue early in the case. He did neither and the UST found out about the property only from its own independent investigation. T69P was not an ancillary issue to Perez's financial interests. *See Keeney*, 227 F.3d at 686 (quoting *In re Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)) ("The subject of a false oath is material if it 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'").

By failing to disclose either Perez's membership interest in T69P on his schedules, or alternatively, explaining that T69P was owned by Precision at the meeting of creditors, Perez effectively kept from the trustee any information about T69P and its only asset, the Triskett Avenue Property. The bankruptcy court was entitled to conclude Perez committed a false oath under § 727(a)(4). *Beaubouef*, 966 F.2d at 178. The bankruptcy court was quite clear as to this particular point. Decision Tr. 7:8–11 ("In terms of the T69P disclosure, I do not find credible the determination that he just didn't really think about that entity when providing the information regarding his assets and his business.").

The next issue is the bankruptcy court's consideration of Perez's failure to list his personal deposit account with Chase Bank. The UST claimed that the failure to list this account on Schedule A/B was a false oath. Perez argues that this assertion was raised as a surprise at trial and the UST's motion to amend the pleadings post-trial should not have been granted. If an issue is not raised in the pleadings, and, as here, an objection is not raised at trial, it may be treated as part of the pleadings if the parties expressly or impliedly consented. Fed. R. Civ. P.

15(b) (applicable by Fed. R. Bankr. P. 7015). The record is clear that Perez did not expressly consent to include the omitted personal Chase Bank account as an issue at trial.

The trial record similarly does not show that Perez impliedly consented to this issue being tried. "Implied consent is not established merely because one party introduced evidence relevant to an unpleaded issue and the opposing party failed to object to its introduction. It must appear that the parties understood the evidence to be aimed at the unpleaded issue." *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 595 (6th Cir. 2015) (quoting *Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992)). Implied consent does not apply if the evidence is also relevant to a claim already pled. *Kehoe*, 796 F.3d at 595–96. Without consent, Rule 15(b) does not allow a plaintiff to submit evidence and subsequently determine which legal allegations the evidence may fit. *Id.* at 596. Furthermore, the court may not do so "on the plaintiff's behalf." *Id.*

However, the personal Chase Bank account was also relevant to Perez's failure to account for all of his income, the same issue that was central in a review of the Precision Chase Bank account, and Perez's use of the debit card for that account for personal expenses. That issue was known to Perez and his counsel from the earliest days of this case when account statements were provided in discovery. Indeed, Perez conceded to the bankruptcy court that he thought any discussion of the personal Chase Bank account was about the allegations related to the failure to account for all of his income. *Obj. to United States Trustee's Mot. to Amend to Conform to Evid.* at 5, ECF No. 61. Therefore, the Panel will evaluate the bankruptcy court's consideration of the personal Chase Bank account solely as it relates to Perez's failure to account for the source of deposits in the account, but not for his failure to list this account on Schedule A/B. The former issue is included in the pleadings but the latter is not, and the Debtor did not consent to try the issue.

The failure to list significant income on his Schedule I—in terms of both Perez's personal Chase Bank account and the Precision Chase Bank account—may be considered as a false oath and follows a pattern of a lack of disclosure. The bankruptcy court considered, but ultimately rejected that these failures could be attributed to his counsel. Nor does the listing of this income on his SOFA render the bankruptcy court's findings clearly erroneous. Income for Schedule I

requires all regular income to be listed. Regular income in these circumstances was beyond salary. Perez regularly benefitted from the use of the ATM card on the Precision Chase Bank account and admitted as much at trial.

In addition, the UST also concluded that the income on the SOFA was not fully disclosed. The bankruptcy court was entitled to resolve that factual dispute as well. The unexplained deposits to the personal Chase Bank account follow the same pattern. Perez tried to explain it at trial as being his children's earnings, and then conceded later in his testimony that he could not explain the deposits. In the end, he had no explanation. The bankruptcy court was entitled to make a reasonable inference from that testimony and conclude that these deposits, like using the Precision business account debit card, were additional undisclosed income. The bankruptcy court's conclusion that the failure to fully account for his income amounts to a false oath is not clearly erroneous.

The last issue was the valuation of Precision. Valuation of a going concern often is a complex endeavor and cannot be equated to the comparatively straightforward valuation of an asset such as a vehicle or a house, in which the valuation of the asset is listed separately from the liens on the schedules. The listing of Precision, at a minimum, placed the UST and the case trustee on inquiry notice about a small business with a very significant judgment against it. Nevertheless, the listing of the membership interest at zero, without any qualifying information, supports the bankruptcy court's conclusion that Perez was following a pattern of not being candid about his assets and income. Ultimately, the bankruptcy court's conclusion about the appropriateness of the Precision valuation is fact-specific, and the bankruptcy court had the opportunity to judge the credibility of the witnesses and the explanations given. Here, the bankruptcy court made a special initial assessment of the credibility of Perez and followed up that assessment with an analysis of the evidence. As a trier of fact, the bankruptcy court is in a unique position to assess credibility that is not available to an appellate panel. Accordingly, this Panel should give deference to the bankruptcy court's assessment. *Keeney*, 227 F.3d at 686 (stating the courts may determine fraudulent intent from the totality of the facts and circumstances). The bankruptcy court essentially determined that the valuation was part of a larger pattern of Perez's lack of truthfulness and desire to conceal assets and the nature of his

business operations, whether accomplished through his schedules, SOFA, or under oath testimony at the meeting of creditors. *See Keeney*, 227 F.3d at 685 (quoting *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 967 (7th Cir. 1999) in concluding that "'[c]omplete financial disclosure' is a prerequisite to the privilege of discharge."). In any event, the false oaths regarding T69P and Perez's income support affirmance of the bankruptcy court's decision without regard to the appropriateness of the valuation.

Perez also argued some of the deficiencies in his filings and testimony were based on counsel's advice and therefore he lacked fraudulent intent. The evaluation of such a defense is also fact-specific, and the bankruptcy court was entitled to disbelieve Perez. *Buckeye Retirement Co., LLC v. Swegan (In re Swegan)*, 383 B.R. 646, 656 (B.A.P. 6th Cir. 2008) (advice of counsel defense requires good faith and reasonableness); *Eifler v. Wilson & Muir Bank & Tr. Co.*, 588 F. App'x 473, 478–79 (6th Cir. 2014) (reliance on counsel requires full disclosure of all pertinent facts to counsel and good faith reliance on counsel's advice). The bankruptcy court determined that Perez understood his business operations and the sources of his income, and intentionally failed to disclose assets and income to avoid collection of the significant judgment against him.

In reviewing the law de novo, the Panel cannot find any legal error justifying reversal such as the court applying the wrong elements for § 727(a)(4) or misstating the burden of proof. While Perez complains that the bankruptcy court intermingled the analysis under § 727(a)(4) and (a)(2), the specific findings discussed above support the bankruptcy court's conclusion that Perez had intentionally made material false oaths, with fraudulent intent, on his schedules, SOFA, and in his testimony at his meeting of creditors and those findings support affirmance under § 727(a)(4). The Panel need not address § 727(a)(2) in order to affirm. *Hamo*, 233 B.R. at 726 (appellate review under § 727(a)(2) unnecessary when § 727(a)(4) provided an independent basis to deny discharge); *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 559 B.R. 692, 700 (B.A.P. 6th Cir. 2016) (similar and collecting cases). Perhaps another bankruptcy court would analyze these facts and reach a different conclusion. Perhaps not. But what is relevant for the Panel is that the specific findings of fact that false oaths occurred are not clearly erroneous and, therefore, are sufficient to affirm the denial of Perez's discharge under § 727(a)(4). Any error by the bankruptcy court in considering the personal Chase Bank account omission as a false

oath is harmless because the other findings of false oaths are supported by the record. Fed. R. Civ. P. 61 (applicable by Fed. R. Bankr. P. 9005); *Tully Constr. Co., Inc. v. Cannonsburg Envtl. Assocs., Ltd. (In re Cannonsburg Envtl. Assocs., Ltd),* 72 F.3d 1260, 1264 (6th Cir. 1996).

## CONCLUSION

For the reasons given, the bankruptcy court's decision to deny Perez's discharge is affirmed.